IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LORI BOKENFOHR,                              3:17-cv-01870-BR

            Plaintiff,                       OPINION AND ORDER

v.

CYNTHIA GLADEN and
CHRISTINE GUIDERA,

            Defendants.


**KRISTEN L. TRANETZKI**
**EDWARD A. PIPER**
Angeli Law Group LLC
121 S.W. Morrison Street
Suite 400
Portland, OR 97204
(503) 954-2232

            Attorneys for Plaintiff

**JOHN J. DUNBAR**
Larkins Vacura LLP
121 S.W. Morrison St
Suite 700
Portland, OR 97204
(503) 222-4424

            Attorneys for Defendant Cynthia Gladen

**JEFFREY M. EDELSON**
**HEATHER ST. CLAIR**
Markowitz Herbold PC
1211 S.W. Fifth Ave
Suite 3000
Portland, OR 97204
(503) 295-3085

Attorneys for Defendant Christine Guidera

**BROWN, Senior Judge.**

This matter comes before the Court on Defendant Christine Guidera's Motion (#27) to Amend Answer and Affirmative Defenses and Defendant Cynthia Gladen's Motion (#28) for Leave to File First Amended Answer, Affirmative Defenses and Counterclaim. For the reasons that follow, the Court **GRANTS** Guidera's Motion as to her affirmative defense of *in pari delicto* and **DEFERS** ruling on Guidera's Motion as to her affirmative defense of unclean-hands. The Court **GRANTS** Gladen's Motion as to her affirmative defenses of *in pari delicto* and laches and **DEFERS** ruling on Guidera's Motion as to her affirmative defense of unclean-hands.

## BACKGROUND

The following facts come from Plaintiff's Complaint, Defendants' Answers, and the parties' filings related to Defendants' Motions.

In 2015 Defendant Cynthia Gladen was married to Kenneth

Kolarsky.[1]  Kenneth Kolarsky was having an affair at that time
with Plaintiff Lori Bokenfohr, an attorney who lived and
practiced law in Canada.

Plaintiff alleges in her Complaint that in 2015 she owned a
laptop computer on which she stored "a broad range of personal
and confidential information" including Plaintiff's banking,
financial, and tax records; Plaintiff's medical records as well
as the medical records of her children; and Plaintiff's "private
photo albums."  Compl. at ¶ 12.  Defendants assert, and Plaintiff
does not appear to contest, that Plaintiff also stored
confidential client information on the laptop.

In July 2015 Kolarsky purchased a solid-state computer drive
(SSD) or "flash drive."  In August 2015 Kolarsky "gave [the SSD]
as a gift to Plaintiff."  Plaintiff intended to use the SSD to
create a back-up copy of the contents of her laptop.

At some point before November 2015 Plaintiff asked Kolarsky
to copy the information from Plaintiff's laptop to the SSD.
Kolarsky tried to do so, but the "attempt appeared to fail,
following which Kolarsky reformatted the SSD."  Compl. at ¶ 14.
Kolarsky and Plaintiff believed the reformatting process
permanently deleted whatever information might have been
partially copied from Plaintiff's laptop to the SSD.  Plaintiff
and Kolarsky were mistaken, however, and some of Plaintiff's

---

[1] Kolarsky is not a party to this action.

personal information including "intimate images depicting
Plaintiff and Kolarsky in bed and unclothed . . . were capable of
being recovered from the SSD."  Compl. at ¶ 15.  Plaintiff left
the SSD with Kolarsky so he could attempt to install a new
operating system on the SSD.

On November 18, 2015, Kolarsky traveled to Canada to visit
Plaintiff and brought the SSD.  On November 22, 2015, Kolarsky
returned to Oregon and left his luggage in the car owned by
Kolarsky and Gladen while Kolarsky coached their child's hockey
game.  During the hockey game Gladen removed "certain items" from
the family car "without Kolarsky's (or plaintiff's) knowledge or
consent."  Compl. at ¶ 16.  Gladen denies removing the SSD from
the car at that time.

Gladen alleges in her proposed First Amended Answer that in
January 2016 she "found the flash drive in her home and she
believed the flash drive belonged to the family."  Gladen
Proposed Am. Answer at ¶ 56.  Gladen alleges in her proposed
First Amended Answer that she could not open the SSD on her
personal computer.  Gladen, therefore, took the SSD and her
personal computer to Office Depot for technical assistance.  The
Office Depot employee was able to restore the SSD by using
Gladen's personal computer, which resulted in the uploading of
images from the SSD to Gladen's "electronic accounts, including
Google Photos, [that] ran through [Gladen's] personal computer

and were accessible to her devices." Gladen Answer at ¶ 18.
Among the uploaded photographs were images of Plaintiff with
Kolarsky "in bed and with no clothing visible" some of which
"were taken in [Gladen's] home." Gladen Proposed Am. Answer at
¶ 33; Answer at ¶ 33. Gladen was upset by the images and sent
"images of plaintiff and [Kolarsky], sometimes in bed with no
clothing visible, to [Defendant Christine] Guidera" as well as
"an image or two to a small number of friends after seeing them."
Gladen Answer at ¶ 33. Guidera admits in her Answer that she
received "electronic photographic images from Gladen." Guidera
Answer at ¶ 6.

In February 2016 Gladen filed separation papers against
Kolarsky.

In June 2016 as part of Gladen and Kolarsky's divorce
proceedings Gladen gave the SSD to Kolarsky. Plaintiff alleges
in her Complaint that Gladen wrongfully continued to retain
copies of the images. Gladen admits she and her attorneys
continue to possess copies of the images, but she notes
Plaintiff's "lawyers demanded in 2016 and again in 2017 that
[Gladen] must preserve these images." Gladen Answer at ¶ 3.

Plaintiff alleges in her Complaint that on June 16, 2016,
Guidera "sent a series of unsolicited Facebook messages to a
woman who then was one of Kolarsky's professinal colleagues. The
messages contained an Intimate Image depicting Plaintiff and

Kolarsky in bed and unclothed." Compl. at ¶ 20. Guidera alleges in her Answer that she sent "a private message to Shanta Roberts via Facebook Messenger, including a G-rated photograph of plaintiff and [Kolarsky]." Guidera Answer at ¶ 6. Guidera asserts in her Answer that she "did not send any graphic or indecent photographs." Guidera Answer at ¶ 6.

On November 21, 2017, Plaintiff filed a Complaint in this Court against Gladen and Guidera in which she brings claims for (1) violation of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030, against Gladen; (2) violation of Oregon Revised Statutes § 30.865(1)(d) against both Defendants; conversion against both Defendants; replevin against both Defendants; and intrusion upon seclusion against both Defendants. Plaintiff seeks compensatory and punitive damages or in the "alternative to an award of compensatory damages reflecting the full value of Plaintiff's Personal Information (but not other compensatory damages), an order of replevin requiring Defendants to identify and return all of Plaintiff's Personal Information"; and/or in the "alternative to an award of compensatory damages reflecting the full value of Plaintiff's Personal Information (but not other compensatory damages), an order imposing a constructive trust for Plaintiff's benefit on all of her Personal Information . . . that is in either Defendant's [*sic*] direct or indirect possession, custody, or control." Compl. at 13.

On January 17, 2018, Gladen filed an Answer, Affirmative Defenses, and Counterclaim in which she asserts affirmative defenses of unclean hands, *in pari delicto*, ownership, abandonment, privilege, standing, consent, waiver, and unconstitutionality. Gladen also asserted a Counterclaim for declaratory judgment in which she sought a judgment that Gladen

> may hire a qualified computer professional to
> remove the images of her ex-husband together with
> plaintiff, or any other information from the SSD
> regarding plaintiff, from Ms. Gladen's devices and
> accounts, provided that Ms. Gladen maintains
> through an attorney or qualified computer
> professional a forensic copy of the SSD and any
> other account or device in which the personal
> information and images at issue in this litigation
> were located or transmitted.

Gladen Answer at ¶ 68.

On January 17, 2018, Guidera filed an Answer and Counterclaim[2] to Plaintiff's Complaint in which she asserted affirmative defenses of failure to state a claim, waiver, consent, abandonment, interest of Defendant Gladen, absolute privilege of consent, standing, unclean hands, and *in pari delicto*.

On February 9, 2018, Gladen filed a Notice of Dismissal of Counterclaim in which she dismissed her Counterclaim for declaratory judgment.

---

[2] Although Guidera does not include affirmative defenses in the title of her Answer, the Answer contains affirmative defenses. Guidera, however, does not include any counterclaims in her Answer.

On March 2, 2018, Plaintiff filed a Motion for Partial
Judgment on the Pleadings or, in the Alternative to Strike or for
Partial Summary Judgment in which she requests the Court to grant
partial judgment on the pleadings as to Defendants' affirmative
defenses of unclean hands and *in pari delicto* or, in the
alternative, to grant partial summary judgment on those
affirmative defenses or to strike those affirmative defenses.

On March 15, 2018, the Court received an email from defense
counsel requesting clarification as to Defendants' time to
respond to Plaintiff' Motion.  Specifically, counsel noted Local
Rule 7-1(e) provides parties must serve responses to motions
within 14 days of service of the motion.  Local Rule 7-1(f),
however, provides parties must serve responses to motions for
summary judgment within 21 days of service of the motion.  As
noted, Plaintiff's Motion was titled as a Motion for Judgment on
the Pleadings or to Strike or in the Alternative as a Motion for
Summary Judgment.  Thus, defense counsel was uncertain whether
the response deadline was 14 or 21 days from service of the
Motion.

On March 15, 2108, the Court entered an Order in which it
noted the email from defense counsel and advised it had reviewed
Plaintiff's Motion and noted "it is couched entirely in terms of
a motion for judgment on the pleadings or motion to strike.  In
other words, there is not any reference to evidence outside of

the pleadings and Plaintiff does not set out the Rule 56 standard or address her arguments to that standard.  This appears, therefore, to be a motion for partial summary judgment in title only."  Accordingly, to the extent that any party sought to amend its pleadings or sought an extension of time to file a response to pleadings, the Court directed the party to file a motion no later than March 23, 2018.  The Court also held the briefing schedule for Plaintiff's Motion for Judgment on the Pleadings in abeyance "until further order of the Court."

On March 21, 2018, the parties filed a Joint Motion to Extend Deadline for Discovery, Set Dispositive Motions Deadline, and Stay Other Deadlines in which the parties sought an order from the Court "(i) extend[ing] the deadline for the close of discovery from March 22, 2018 to July 13, 2018, (ii) set[ting] a dispositive motions deadline of August 31, 2018, and (iii) stay[ing] all other deadlines until at least August 31, 2018."

On March 23, 2018, the Court granted the parties' Joint Motion and struck all previously-set, case-management deadlines.

On March 23, 2018, Guidera also filed a Motion (#27) to Amend Answer and Affirmative Defenses and Gladen filed a Motion (#28) for Leave to File First Amended Answer, Affirmative Defenses and Counterclaim in which, among other things, she reasserts her Counterclaim for declaratory judgment.

On March 27, 2018, the Court signed the parties' Stipulated Protective Order limiting the use and dissemination of Plaintiff's private data, which is the subject of this action.

On April 6, 2018, Plaintiff filed a combined Response to both Defendants' Motions to Amend. The Court took Defendants' Motions to Amend under advisement on May 2, 2018.


## STANDARDS

Federal Rule of Civil Procedure 15(a) provides a party may amend a pleading after a responsive pleading has been filed only by leave of court unless the opposing party consents to the amendment. Rule 15(a), however, also provides leave to amend "shall be freely given when justice so requires." This policy is to be applied with "extreme liberality." *Moss v. United States Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009).

The Supreme Court has recognized several factors that a district court should consider when determining whether justice requires the court to grant leave to amend. Those factors include

> undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment.

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)(quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The factor that carries the greatest weight is whether the amendment will prejudice the opposing party. *Id.* "Absent prejudice or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id.*

A proposed amendment "is futile only 'if no set of facts can be proved under the amendment . . . that would constitute a valid and sufficient claim.'" *Wisdom v. Centerville Fire Dist., Inc.*, 391 F. App'x 580, 583 (9th Cir. 2010)(quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)). *See also Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008)(proposed amendment . . . is futile when the pleading "could not be saved by any amendment."). "'If the underlying facts or circumstances relied upon by a [party] may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.'" *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 957 (9th Cir. 2006)(quoting *Foman*, 371 U.S. at 182). A party should be afforded an opportunity to test her claim on the merits unless it appears beyond doubt that the proposed amended pleading would be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *AmerisourceBergen*, 465 F.3d at 957.

<u>**DISCUSSION**</u>

Guidera seeks to amend her Answer to add facts in support of her affirmative defenses of unclean hands and *in pari delicto* and to add other clarifying facts. Gladen seeks to amend her Answer to add facts in support of her affirmative defenses of unclean hands and *in pari delicto*, to assert an additional affirmative defense of laches, and to add other clarifying facts. Plaintiff opposes both Defendants' requested amendments on the ground that amendment would be futile.

**I.    *In Pari Delicto***

**A.    Gladen's Affirmative Defense of *In Pari Delicto***

In her Answer Gladen asserts the affirmative defense of *in pari delicto* as follows:

> To the extent plaintiff can prove any of her claims, relief is barred as a result of plaintiff's participation in negligent, improper, bad faith conduct. Plaintiff took pictures or allowed them to be taken of herself in Gladen's home with [Kolarsky] without clothing. According to plaintiff's account, plaintiff also gave Kolarsky access to her computer so that he could copy its contents onto a portable storage device. Plaintiff failed to take reasonable steps to protect the information and images left on the SSD. Plaintiff's claims are barred.

Gladen Answer at ¶ 56. In her Motion for Leave to File First Amended Answer Gladen's proposed affirmative defense of *in pari delicto* relies in part on the following facts that Gladen alleges also support her unclean hands defense:

Plaintiff has unclean hands and is not entitled to
equitable relief.  This action involves
information copied onto a solid state drive.  A
solid state drive is a flash drive, a small,
handheld storage device.  Plaintiff alleges that
[Gladen] "stole" this flash drive from "his" (her
husband's) car to obtain "unauthorized access" to
its contents, all of which [Gladen] denies.
[Gladen] found the flash drive in her home and she
believed the flash drive belonged to the family.
Moreover, plaintiff was either grossly negligent
or reckless in the way she handled her law firm
information and the images, as well as the privacy
of the information copied onto the flash drive.
The information on the flash drive included
sexually explicit photographic images of
plaintiff, including images depicting plaintiff
together with Dr. Kolarsky, [Gladen]'s husband at
the time.  Some of these images were even taken in
[Gladen's] home, without [Gladen's] knowledge.
Despite the nature of the information, plaintiff
continued with a series of high-risk behaviors and
decisions, as described below.

Plaintiff seeks relief against [Gladen] with
respect to [Gladen's] access to and handling of
the images in a way that plaintiff contends
violated her right to privacy, but plaintiff's own
handling of the information was unreasonable and
put the information at risk of discovery.
According to plaintiff's complaint, plaintiff
entrusted the copying of the contents of her
laptop, including her law firm information and the
explicit images, to [Kolarsky].  [Kolarsky] was
not skilled or adept in the handling of sensitive
computerized information.  Even though plaintiff
knew that [Kolarsky] had botched his effort to
copy information onto the flash drive, according
to plaintiff, she was satisfied by his effort to
fix the problem and even allowed him to keep the
flash drive.  At the time, on information and
belief, plaintiff was aware of the risks of
leaving information on electronic storage devices.
Further, on information and belief, plaintiff knew
that [Gladen] was already concerned that her
husband was involved in an affair with plaintiff,
and that [Gladen] was concerned about various
transactions that plaintiff had encouraged

Kolarsky to make.  In light of plaintiff's
knowledge, plaintiff's own handling of the
information, and her failure to safeguard it, was
either grossly negligent or reckless, or both.
Plaintiff's gross negligence and recklessness led
to [Gladen] accessing the images and to [Gladen]'s
reaction to them.  Plaintiffs' conduct caused
[Gladen] needless pain and suffering.

Gladen's Proposed Am. Answer at ¶¶ 56-57.  Specifically, Gladen

proposes the following amended affirmative defense of *in pari*

*delicto*:  "Plaintiff incorporates paragraphs 55 to 57 above.

Having engaged in the intentional, grossly negligent and reckless

conduct described above, plaintiff is *in pari delicto* and is not

entitled to relief."  Gladen Proposed Am. Answer at ¶ 58.

**B.    Guidera's Affirmative Defense of *In Pari Delicto***

Guidera alleges the affirmative defense of *in pari*

*delicto* in her Answer as follows:  "To the extent plaintiff can

prove any of her claims against the defendants, relief is barred

as a result of plaintiff's share of misdeeds, including the bad

faith actions, negligence, and unethical conduct described

above."  Guidera Answer at ¶ 18.

In her Proposed Amended Answer Guidera's proposed

affirmative defense of *in pari delicto* relies in part on the

following facts that Guidera alleges also support her unclean

hands defense:

Plaintiff was engaged in an extramarital affair
with [Kolarsky].  Plaintiff's course of conduct
throughout the affair was marked with deceitful,
inequitable, reckless and grossly negligent
behavior, including:

- Photographing or permitting Kolarsky to document their affair with explicit photographs, even in [Gladen's] home and bed;

- Storing those photographs on the same computer on which she kept client information;

- Permitting Kolarsky to copy client information and the photographs onto a flash drive;

- Allowing Kolarsky to retain the flash drive with all of its contents, and to bring the drive into the home he shared with [Gladen];

- Helping Kolarksy cover up the affair and lie to [Gladen] about his whereabouts and activities;

- Advising Kolarsky on wasting marital assets and reducing his liabilities to Gladen and their children in eventual divorce proceedings;

- Repeatedly refusing to permit defendants to delete the images from their possession, even after the flash drive had been relinquished, insisting that copies and metadata be preserved for litigation for more than a year and a half before filing suit.

Plaintiff was reckless and grossly negligent with the contents of her laptop computer, which not only contained the photographic evidence of her extramarital affair, but may have also contained client information related to her legal business, and other evidence of her conduct.

Afraid of the consequences that plaintiff might suffer if this information became public in Canada, where plaintiff practices law, plaintiff then maliciously began interfering with Gladen and Kolarsky's divorce proceedings. Plaintiff sent a letter on her official letterhead to Gladen's

divorce attorney, claiming to be Kolarsky's "legal agent" in order to obtain confidential information. Kolarsky admitted in depositions to paying plaintiff five thousand dollars in legal fees, and contended that the pair shared attorney-client privilege. Plaintiff and Kolarsky later filed a bar complaint against Gladen's legal counsel in Oregon, which was unsubstantiated. When Guidera subsequently filed a bar complaint against plaintiff in Canada because of this gross misconduct and unethical behavior, plaintiff maliciously brought this lawsuit against both defendants. Plaintiff implores the court for relief from the consequences of her own misdeeds and unethical conduct, but is barred from any equitable relief sought because of her unclean hands.

To the extent that plaintiff can spear [Gladen] with a conversion claim and reach through her to [Guidera], [Guidera] is entitled to invoke the same shield that protects [Gladen]. [Guidera] would not have been in possession of any images of plaintiff if [Gladen] had not been in possession of those images. [Gladen] would not have been in possession of any images of plaintiff without plaintiff's reckless and negligent behavior in ensuring [Gladen] became aware of her. Therefore, [Guidera] would not have been in possession of any images of plaintiff without plaintiff's reckless and negligent behavior in assuring that result.

Guidera Proposed Am. Answer at ¶¶ 18-21. Specifically, Guidera alleges in her proposed affirmative defense of *in pari delicto*:

To the extent plaintiff can prove any of her claims against the defendants, relief is barred as a result of plaintiff's share of misdeeds, including her bad faith, deceitful, and inequitable actions, her reckless actions, gross negligence, and unethical conduct described above. [Guidera] . . . benefits from the same defense as [Gladen] in that plaintiff's claims against her are dependent on plaintiff's claims against [Gladen].

Guidera Proposed Am. Answer at ¶ 22.

16 - OPINION AND ORDER

C.    **The Law**

"*In pari delicto* has been referred to as a 'companion principle' to the equitable maxim of clean hands, to be applied in actions at law where equitable doctrines are irrelevant." *McKinley v. Weidner*, 73 Or. App. 396, 398-401 (1985). *See also Vukanovich v. Kine*, 268 Or. App. 623, 639 n.10 (2015)(holding the defense of unclean hands applies only in equitable cases, and "the applicable defense in a 'law case' is *in pari delicto*."). In *McKinley* the Oregon Court of Appeals explained

> [t]he proper nomenclature . . . is that the parties were *in pari delicto, i.e.*, "[i]n equal fault; in a similar offense or crime; equal in guilt or in legal fault." *Black's Law Dictionary* 1270 (4th Ed. Rev. 1968). That the parties are *in pari delicto* is often asserted in contract disputes and claims for indemnity. It has also been applied in negligence actions.

73 Or. App. at 400-01.

The defense of *in pari delicto* requires a defendant to plead and to prove that the plaintiff "engaged in misconduct in connection with the matter for which . . . she seeks relief." *Vukanovich,* 268 Or. App. at 639. "[F]or the doctrine to apply, 'the misconduct must be serious enough to justify a court's denying relief on an otherwise valid claim. [The doctrine] does not require saintliness.'" *Id.* (citing *N. Pac. Lumber Co. v. Oliver*, 286 Or. 639, 651 (1979)(noting courts have applied the doctrine when a plaintiff's conduct constituted a crime, fraud,

or bad faith).  In *Vukanovich* the court declined to apply the
doctrine because the plaintiff's conduct did not "constitute
misconduct" and the plaintiff did not do anything
"impermissible."  269 Or. App. at 641.

The Oregon Court of Appeals also explained:

> The doctrine of *in pari delicto* may — but not need
> — be applied to prevent recovery in a law action,
> when the party against whom it is to be applied is
> as culpable as, or more culpable than, his
> opponent.  The question then becomes whether, on
> the state of the record the trial court had before
> it in this case, it could be established that
> plaintiff was equally culpable with, or more
> culpable than, defendant.

*McKinley*, 73 Or. App. at 401.  Thus, the defense of *in pari
delicto* requires a defendant to plead and to prove that the
plaintiff engaged in misconduct "serious enough to justify a
court's denying relief on an otherwise valid claim" in connection
with the matter for which the plaintiff seeks relief.  A
defendant must also establish on the record that the plaintiff
was equally or more culpable than the defendant.

   **D.   Analysis**

As noted, Plaintiff opposes Defendants' proposed
amendments to *in pari delicto* affirmative defenses on the ground
that amendment would be futile.  Specifically, Plaintiff asserts
Defendants fail to allege, nor can they allege, that Plaintiff
and Defendants acted in concert.  Defendants, however, point out
that the Oregon Supreme Court has recognized *in pari delicto* can

apply when parties have "act[ed] independently or jointly."
*S. Pac. Co. v. Morrison-Knudsen Co.*, 216 Or. 398, 405-06
(1950)(citing *Restatement on Restitution* § 102). Similarly, in
*Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 307
(1985), the Supreme Court noted "[n]otwithstanding [the]
traditional limitations, many courts have given the *in pari
delicto* defense a broad application to bar actions where
plaintiffs simply have been involved generally in 'the same sort
of wrongdoing' as defendants."

 Plaintiff also asserts amendment would be futile
because she acted less culpably than Defendants and her alleged
wrongdoing was not the same type as Defendants' alleged
wrongdoing. Plaintiff's assertion, however, is based on her
version of the facts that underlie her claims. As noted,
however, Defendants dispute those facts and allege materially
different facts related to Plaintiff's claims and Defendants'
affirmative defenses.

 On this record, therefore, the Court concludes
Plaintiff has not established "no set of facts can be proved
under the amendment . . . that would constitute a valid and
sufficient claim.'" *See Wisdom*, 391 F. App'x at 583.

 Accordingly, the Court **GRANTS** Defendants' Motions to
Amend their Answers as to their *in pari delicto* affirmative
defenses.

## II.  Unclean Hands

### A.  Gladen's Affirmative Defense of Unclean Hands

In her Answer Gladen asserts the affirmative defense of unclean hands as follows:

> Plaintiff participated in an extramarital affair with plaintiff's husband and participated in making images of herself with [Gladen's] husband in [Gladen's] home and bed.  Plaintiff assisted in the cover-up of the affair and, on information and belief, in other misconduct involving [Gladen's]. Plaintiff has unclean hands and is not entitled to equitable relief.

Gladen Answer at ¶ 55.

In her Motion for Leave to File First Amended Answer Gladen proposes the following amended affirmative defense of unclean hands:

> Plaintiff has unclean hands and is not entitled to equitable relief.  This action involves information copied onto a solid state drive.  A solid state drive is a flash drive, a small, handheld storage device.  Plaintiff alleges that [Gladen] "stole" this flash drive from "his" (her husband's) car to obtain "unauthorized access" to its contents, all of which [Gladen] denies. [Gladen] found the flash drive in her home and she believed the flash drive belonged to the family. Moreover, plaintiff was either grossly negligent or reckless in the way she handled her law firm information and the images, as well as the privacy of the information copied onto the flash drive. The information on the flash drive included sexually explicit photographic images of plaintiff, including images depicting plaintiff together with Dr. Kolarsky, [Gladen]'s husband at the time.  Some of these images were even taken in [Gladen's] home, without [Gladen's] knowledge. Despite the nature of the information, plaintiff continued with a series of high-risk behaviors and decisions, as described below.

Plaintiff seeks relief against [Gladen] with
respect to [Gladen's] access to and handling of
the images in a way that plaintiff contends
violated her right to privacy, but plaintiff's own
handling of the information was unreasonable and
put the information at risk of discovery.
According to plaintiff's complaint, plaintiff
entrusted the copying of the contents of her
laptop, including her law firm information and the
explicit images, to [Kolarsky].  [Kolarsky] was
not skilled or adept in the handling of sensitive
computerized information.  Even though plaintiff
knew that [Kolarsky] had botched his effort to
copy information onto the flash drive, according
to plaintiff, she was satisfied by his effort to
fix the problem and even allowed him to keep the
flash drive.  At the time, on information and
belief, plaintiff was aware of the risks of
leaving information on electronic storage devices.
Further, on information and belief, plaintiff knew
that [Gladen] was already concerned that her
husband was involved in an affair with plaintiff,
and that [Gladen] was concerned about various
transactions that plaintiff had encouraged
Kolarsky to make.  In light of plaintiff's
knowledge, plaintiff's own handling of the
information, and her failure to safeguard it, was
either grossly negligent or reckless, or both.
Plaintiff's gross negligence and recklessness led
to [Gladen] accessing the images and to [Gladen]'s
reaction to them.  Plaintiffs' conduct caused
[Gladen] needless pain and suffering.

Gladen's Proposed Am. Answer at ¶¶ 56-57.

### B.   Guidera's Affirmative Defense of Unclean Hands

In her Answer Guidera asserts the affirmative defense

of unclean hands as follows:

Plaintiff was engaged in an extramarital affair
with [Kolarsky].  Gladen was unaware of the affair
and trapped in an abusive marriage to a man that
spent years cheating on her, and emotionally
abusing her.  Upon information and belief,
plaintiff's affair with Kolarsky prompted her to
give him legal advice on how to waste marital

assets and otherwise reduce his liability to
Gladen in eventual divorce proceedings. Plaintiff
had sexual relations with [Kolarsky], in Gladen's
home, and in Gladen's bed. Plaintiff then
carelessly permitted her married lover to copy
images of the pair's activities onto an external
storage device (the alleged "SSD"), presumably for
his own gratification.

Plaintiff was negligent with the contents of her
laptop computer, which not only contained the
photographic evidence of her extramarital affair,
but may have also contained client information
related to her legal business, and other evidence
of her conduct.

Afraid of the consequences that plaintiff might
suffer if this information became public in
Canada, where plaintiff practices law, plaintiff
then maliciously began interfering with Gladen and
Kolarsky's divorce proceedings. Plaintiff sent a
letter on her official letterhead to Gladen's
divorce attorney, claiming to be Kolarsky's "legal
agent" in order to obtain confidential
information. Kolarsky admitted in depositions to
paying plaintiff five thousand dollars in legal
fees, and contended that the pair shared
attorney-client privilege. Plaintiff and Kolarsky
later filed a bar complaint against Gladen's legal
counsel in Oregon, which was unsubstantiated. When
Guidera subsequently filed a bar complaint against
plaintiff in Canada because of this gross
misconduct and unethical behavior, plaintiff
maliciously brought this lawsuit against both
defendants. Plaintiff implores the court for
relief from the consequences of her own misdeeds
and unethical conduct, but is barred from any
equitable relief sought because of her unclean
hands.

Guidera Answer at ¶¶ 15-17.

In her Motion to Amend Answer Guidera proposes the

following amended affirmative defense of unclean hands:

Plaintiff was engaged in an extramarital affair
with [Kolarsky]. Plaintiff's course of conduct

throughout the affair was marked with deceitful, inequitable, reckless and grossly negligent behavior, including:

- Photographing or permitting Kolarsky to document their affair with explicit photographs, even in [Gladen's] home and bed;

- Storing those photographs on the same computer on which she kept client information;

- Permitting Kolarsky to copy client information and the photographs onto a flash drive;

- Allowing Kolarsky to retain the flash drive with all of its contents, and to bring the drive into the home he shared with [Gladen];

- Helping Kolarksy cover up the affair and lie to [Gladen] about his whereabouts and activities;

- Advising Kolarsky on wasting marital assets and reducing his liabilities to Gladen and their children in eventual divorce proceedings;

- Repeatedly refusing to permit defendants to delete the images from their possession, even after the flash drive had been relinquished, insisting that copies and metadata be preserved for litigation for more than a year and a half before filing suit.

Plaintiff was reckless and grossly negligent with the contents of her laptop computer, which not only contained the photographic evidence of her extramarital affair, but may have also contained client information related to her legal business, and other evidence of her conduct.

Afraid of the consequences that plaintiff might suffer if this information became public in

Canada, where plaintiff practices law, plaintiff
then maliciously began interfering with Gladen and
Kolarsky's divorce proceedings.  Plaintiff sent a
letter on her official letterhead to Gladen's
divorce attorney, claiming to be Kolarsky's "legal
agent" in order to obtain confidential
information.  Kolarsky admitted in depositions to
paying plaintiff five thousand dollars in legal
fees, and contended that the pair shared
attorney-client privilege.  Plaintiff and Kolarsky
later filed a bar complaint against Gladen's legal
counsel in Oregon, which was unsubstantiated.
When Guidera subsequently filed a bar complaint
against plaintiff in Canada because of this gross
misconduct and unethical behavior, plaintiff
maliciously brought this lawsuit against both
defendants.  Plaintiff implores the court for
relief from the consequences of her own misdeeds
and unethical conduct, but is barred from any
equitable relief sought because of her unclean
hands.

To the extent that plaintiff can spear [Gladen]
with a conversion claim and reach through her to
[Guidera], [Guidera] is entitled to invoke the
same shield that protects [Gladen].  [Guidera]
would not have been in possession of any images of
plaintiff if [Gladen] had not been in possession
of those images.  [Gladen] would not have been in
possession of any images of plaintiff without
plaintiff's reckless and negligent behavior in
ensuring [Gladen] became aware of her.  Therefore,
[Guidera] would not have been in possession of any
images of plaintiff without plaintiff's reckless
and negligent behavior in assuring that result.

Guidera Proposed Am. Answer at ¶¶ 18-21.

C.    **The Law**

To state a claim for unclean hands a party must allege

(1) the party seeking relief has engaged in "bad conduct" and

(2) the conduct is "related to the transaction giving rise to the

claim." *Oliver*, 286 Or. at 653.  As noted, unclean hands is an

equitable doctrine that applies only to equitable remedies rooted

in the concept that

> when a person who seeks the aid of a court of
> equity has himself been guilty of wrong in his
> prior conduct related to the matters upon which he
> seeks the aid of the court, he is denied the
> remedy he seeks, for he comes before the court
> with unclean hands.

*Id*. at 648 (quotation omitted).

### D. Analysis

As noted, Plaintiff opposes Defendants' Motions to

Amend on the ground that the amendments would be futile.

Specifically, Plaintiff asserts negligent or reckless conduct is

insufficient to support an unclean-hands defense, the wrongful

conduct that Defendants allege Plaintiff engaged in is unrelated

to Plaintiff's privacy claims, and Defendants do not allege any

injury that would support the defense of unclean hands.  The

parties dispute at some length both the nuances of the elements

of the doctrine of unclean hands and its application to the facts

that Defendants have asserted in their Answers and Proposed

Amended Answers.

The Court notes pursuant to *Oliver* that Defendants'

affirmative defense of unclean hands applies only to Plaintiff's

requested equitable relief.  Plaintiff, however, only seeks

equitable relief in the alternative to damages and for either

replevin or imposition of a constructive trust.  In both

alternative requests for equitable relief Plaintiff seeks an

order requiring Defendants to identify and to return all of
Plaintiff's personal information. Defendants, in turn, appear
more than willing to return Plaintiff's personal information.
For example, Gladen alleges in her Counterclaim that she seeks to
reassert in her Proposed Amended Answer that she "has no interest
in continuing to maintain on any device or account the images of
[Kolarsky] together with plaintiff or any other information
regarding plaintiff." Proposed Am. Answer at ¶ 70. Gladen also
alleges in her Counterclaim that she advised Plaintiff's counsel
in July 2016 and again in November 2017 that she is "willing to
arrange for the deletion of the images at issue, while preserving
information for litigation purposes. . . . Plaintiff did not
agree." Proposed Am. Answer at ¶ 71. In her Counterclaim for
declaratory judgment Gladen requests the Court to

> determine the rights of the parties and issue a
> judgment that [Gladen] may hire a qualified
> computer professional to remove the images of
> [Kolarsky] together with plaintiff or any other
> information from the SSD regarding plaintiff, from
> [Gladen's] devices and accounts, provided that
> [Gladen] maintains through an attorney or
> qualified computer professional a forensic copy of
> the SSD and any other account or device in which
> the personal information and images at issue in
> this litigation were located or transmitted.

Proposed Am. Answer at ¶ 71. It appears to the Court that the
parties should be able to resolve Plaintiff's claims for
equitable relief as follows: Return Plaintiff's data while
counsel retain forensic copies of the SSD and/or other accounts

of devices to which the images were transferred solely for use
in this litigation and subject to the Protective Order entered
March 27, 2018.

The Court, therefore, **DIRECTS** the parties to confer
through counsel in real time (and preferably in person) regarding
the return and removal of Plaintiff's personal data and the
potential retention of forensic copies of that data as needed for
this litigation subject to the Protective Order entered
March 27, 2018.  The Court **DIRECTS** the parties to file **no later
than June 19, 2018**, a stipulated agreement for the return and
removal of Plaintiff's data from the SSD and Plaintiff's computer
or other devices that satisfies both Plaintiff's alternative
claims for equitable relief of replevin or a constructive trust
and Gladen's requested relief for removal of Plaintiff's data
from the SSD and her computer or other devices while counsel
retain forensic copies necessary only for this litigation or to
file a status report explaining why they were unable to reach
agreement on this apparently uncontested issue.

After the parties file their stipulated agreement, the
Court will deny as moot Defendants' Motions to Amend as to the
unclean hands affirmative defenses and Gladen's Counterclaim for
declaratory judgment.  If the parties file a status report in
lieu of a stipulated agreement regarding returning the data that
is the subject of this litigation, the Court will give the

parties additional instructions.

## III. Laches

Finally, Gladen seeks to amend her Answer to assert an affirmative defense of laches as follows: "Plaintiff did not file this action until almost a year and-a-half after she learned that [Gladen] had found the images. Laches bars plaintiff's requests for equitable relief." Gladen Proposed Am. Answer at ¶ 66. Plaintiff asserts Gladen's laches defense is futile.

"The laches doctrine bars a party from asserting an equitable claim when the party had 'knowledge of relevant facts under which it could have acted earlier" and the party's delay substantially prejudiced the opposing party.'" *Hammond v. Hammond*, 246 Or. App. 775, 783 (2011)(quoting *Myers v. Weems*, 128 Or. App. 444, 446 (1994)). "The laches inquiry depends on the facts and circumstances of each case and 'will not be applied mechanically to every situation' merely because a party has acted with neglect." *Hammond*, 246 Or. App. at 783 (quoting *Hilterbrand v. Carter*, 175 Or. App. 335, 343 (2001)).

"'Courts often look to an analogous statute of limitations to define a presumptively reasonable period within which one may file a claim in equity.'" *Eichner v. Anderson*, 229 Or. App. 495, 499 (2009)(quoting *Fraiser v. Nolan*, 195 Or. App. 211, 215 (2004)). Thus, when a plaintiff has filed an action within the limitation period, it is considered "presumptively reasonable"

and the defendant must rebut the presumption.

Plaintiff asserts she brought her claims within the applicable limitations periods and Gladen has not established substantial prejudice. Gladen, however, notes Plaintiff alleges in her claim for conversion that Gladen has held Plaintiff's pictures and information for so long that Plaintiff has been deprived of the full value of the pictures and information. The record reflects Plaintiff knew Gladen had the information at issue no later than June 2016. Gladen alleges in her Answer that Gladen's counsel informed Plaintiff's counsel in July 2016 and again on November 17, 2017, that Gladen was willing to arrange for the deletion of the images, but Plaintiff would not agree. Instead Plaintiff filed her Complaint alleging, among other things, that the claim for conversion is based in part on Defendants' continued possession of the images at issue despite Defendants' efforts to work with Plaintiff to delete the data. Thus, according to Gladen, Plaintiff demanded Gladen retain the data at issue and then asserted a claim for conversion based in part on Gladen's continued retention of the data. According to Gladen, therefore, she has rebutted the presumption of reasonableness and established potential prejudice.

The Court agrees with Gladen to the extent that Gladen's laches defense relates to any part of Plaintiff's claims in which she asserts she is entitled to equitable relief on the basis that

Gladen continued to retain the images after she sought to reach an agreement with Plaintiff to remove the data from Gladen's devices.  The Court, therefore, concludes Gladen has established her proposed amendment to add a laches defense is not futile.

Accordingly, the Court **GRANTS** Gladen's Motion for Leave to File First Amended Answer to the extent that Gladen seeks to add her proposed affirmative defense of laches.


### CONCLUSION

For these reasons, the Court **GRANTS** Guidera's Motion (#27) to Amend Answer and Affirmative Defenses as to Guidera's affirmative defense of *in pari delicto* and **DEFERS** ruling on Guidera's Motion as to her unclean-hands affirmative defense. The Court **GRANTS** Gladen's Motion (#28) for Leave to File First Amended Answer, Affirmative Defenses and Counterclaim as to Gladen's affirmative defenses of *in pari delicto* and laches and **DEFERS** ruling on Guidera's Motion as to her unclean-hands affirmative defense.

The Court **DIRECTS** the parties to file **no later than June 19, 2018**, a stipulated agreement for the return and removal of Plaintiff's data from the SSD and Plaintiff's computer or other devices as set out in this Opinion and Order or to file a joint status report explaining why the parties have not stipulated to

the return of the data as proposed.

IT IS SO ORDERED.

DATED this 29th day of May, 2018.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge