IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LORI BOKENFOHR,                         3:17-cv-01870-BR

       Plaintiff,                       OPINION AND ORDER

v.

CYNTHIA GLADEN and
CHRISTINE GUIDERA,

       Defendants.


KRISTEN L. TRANETZKI
EDWARD A. PIPER
Angeli Law Group LLC
121 S.W. Morrison Street
Suite 400
Portland, OR 97204
(503) 954-2232

       Attorneys for Plaintiff

JOHN J. DUNBAR
Larkins Vacura LLP
121 S.W. Morrison St
Suite 700
Portland, OR 97204
(503) 222-4424

       Attorneys for Defendant Cynthia Gladen

1 - OPINION AND ORDER

**JEFFREY M. EDELSON**
**HEATHER ST. CLAIR**
Markowitz Herbold PC
1211 S.W. Fifth Ave
Suite 3000
Portland, OR 97204
(503) 295-3085

Attorneys for Defendant Christine Guidera

**BROWN, Senior Judge.**

This matter comes before the Court on Defendant Cynthia Gladen's Motion (#37) for Protective Order and Motion (#37) to Quash Subpoena. For the reasons that follow, the Court **GRANTS** Gladen's Motion to Quash and **DENIES as moot** Gladen's Motion for Protective Order.

## BACKGROUND

The following facts are taken from Plaintiff's Complaint, Defendants' Answers, and the parties' filings related to Defendants' Motions.

In 2015 Defendant Cynthia Gladen was married to Kenneth Kolarsky.[1] Kolarsky was having an affair at that time with Plaintiff Lori Bokenfohr, an attorney who lived and practiced law in Canada.

Plaintiff alleges in her Complaint that in 2015 she owned a laptop computer on which she stored "a broad range of personal

---

[1] Kolarsky is not a party to this action.

and confidential information" including Plaintiff's banking, financial, and tax records; Plaintiff's medical records as well as the medical records of her children; and Plaintiff's "private photo albums." Compl. at ¶ 12. Defendants assert, and Plaintiff does not appear to contest, that Plaintiff also stored confidential client information on the laptop.

In July 2015 Kolarsky purchased a solid-state computer drive (SSD) or "flash drive." In August 2015 Kolarsky "gave [the SSD] as a gift to Plaintiff." Plaintiff intended to use the SSD to create a back-up copy of the contents of her laptop.

At some point before November 2015 Plaintiff asked Kolarsky to copy the information from Plaintiff's laptop to the SSD. Kolarsky tried to do so, but the "attempt appeared to fail, following which Kolarsky reformatted the SSD." Compl. at ¶ 14. Kolarsky and Plaintiff believed the reformatting process permanently deleted whatever information might have been partially copied from Plaintiff's laptop to the SSD. Plaintiff and Kolarsky were mistaken, however, and some of Plaintiff's personal information including "intimate images depicting Plaintiff and Kolarsky in bed and unclothed . . . were capable of being recovered from the SSD." Compl. at ¶ 15. Plaintiff left the SSD with Kolarsky so he could attempt to install a new operating system on the SSD.

On November 18, 2015, Kolarsky traveled to Canada to visit

Plaintiff and brought the SSD. On November 22, 2015, Kolarsky returned to Oregon and, while Kolarsky coached their child's hockey game, he left his luggage in the car owned by Kolarsky and Gladen. During the hockey game Gladen removed "certain items" from the family car "without Kolarsky's (or plaintiff's) knowledge or consent." Compl. at ¶ 16. Gladen, however, denies removing the SSD from the car at that time.

Gladen also alleges in her proposed First Amended Answer that in January 2016 she "found the flash drive in her home and she believed the flash drive belonged to the family." Gladen Proposed Am. Answer at ¶ 56. Gladen also alleges in her proposed First Amended Answer that she could not open the SSD on her personal computer. Gladen, therefore, took the SSD and her personal computer to Office Depot for technical assistance. The Office Depot employee was able to restore the SSD by using Gladen's personal computer, which resulted in the uploading of images from the SSD to Gladen's "electronic accounts, including Google Photos, [that] ran through [Gladen's] personal computer and were accessible to her devices." Gladen Answer at ¶ 18. Among the uploaded photographs were images of Plaintiff with Kolarsky "in bed and with no clothing visible," some of which "were taken in [Gladen's] home." Gladen Proposed Am. Answer at ¶ 33; Answer at ¶ 33. Gladen was upset by the images and sent "images of plaintiff and [Kolarsky], sometimes in bed with no

clothing visible, to [Defendant Christine] Guidera" as well as "an image or two to a small number of friends after seeing them." Gladen Answer at ¶ 33. Guidera admits in her Answer that she received "electronic photographic images from Gladen." Guidera Answer at ¶ 6.

In February 2016 Gladen filed separation papers against Kolarsky.

In June 2016 Gladen gave the SSD to Kolarsky as part of their divorce proceedings. Plaintiff alleges in her Complaint that Gladen wrongfully continued to retain copies of the images. Gladen admits she and her attorneys still possess copies of the images, but she notes Plaintiff's "lawyers demanded in 2016 and again in 2017 that [Gladen] must preserve these images." Gladen Answer at ¶ 3.

Plaintiff alleges in her Complaint that on June 16, 2016, Guidera "sent a series of unsolicited Facebook messages to a woman who then was one of Kolarsky's professional colleagues. The messages contained an Intimate Image depicting Plaintiff and Kolarsky in bed and unclothed." Compl. at ¶ 20. Guidera alleges in her Answer that she sent "a private message to Shanta Roberts via Facebook Messenger, including a G-rated photograph of plaintiff and [Kolarsky]." Guidera Answer at ¶ 6. In addition, Guidera asserts in her Answer that she "did not send any graphic or indecent photographs." Guidera Answer at ¶ 6.

5 - OPINION AND ORDER

On November 21, 2017, Plaintiff filed a Complaint in this Court against Gladen and Guidera in which she brings claims for (1) violation of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030, against Gladen; (2) violation of Oregon Revised Statutes § 30.865(1)(d) against both Defendants; conversion against both Defendants; replevin against both Defendants; and intrusion upon seclusion against both Defendants. Plaintiff seeks compensatory and punitive damages or in the "alternative to an award of compensatory damages reflecting the full value of Plaintiff's Personal Information (but not other compensatory damages), an order of replevin requiring Defendants to identify and return all of Plaintiff's Personal Information" and/or in the "alternative to an award of compensatory damages reflecting the full value of Plaintiff's Personal Information (but not other compensatory damages), an order imposing a constructive trust for Plaintiff's benefit on all of her Personal Information . . . that is in either Defendant's [*sic*] direct or indirect possession, custody, or control." Compl. at 13.

On January 17, 2018, Gladen filed an Answer, Affirmative Defenses, and Counterclaim in which she asserts affirmative defenses of unclean hands, *in pari delicto*, ownership, abandonment, privilege, standing, consent, waiver, and unconstitutionality. Gladen also asserted a Counterclaim for declaratory judgment.

On January 17, 2018, Guidera filed an Answer and Counterclaim[2] to Plaintiff's Complaint in which she asserted affirmative defenses of failure to state a claim, waiver, consent, abandonment, interest of Defendant Gladen, absolute privilege of consent, standing, unclean hands, and *in pari delicto*.

On March 27, 2018, the Court signed the parties' Stipulated Protective Order limiting the use and dissemination of Plaintiff's private data, which is the subject of this action.

On May 4, 2018, Gladen filed a Motion (#37) for Protective Order and Motion to Quash Subpoena relative to a Subpoena Plaintiff issued to Kolarsky. The Court took this matter under advisement on June 1, 2018.

## STANDARDS

Federal Rule of Civil Procedure 45(d)(3)(A)(iii) requires the Court "on timely motion" to quash a subpoena "that subjects a person to undue burden." When "considering a motion to quash a subpoena duces tecum, the court must also consider whether the subpoena 'is overly broad or seeking irrelevant information under the same standards set forth in Rule 26(b)." *R. Prasad Indus. v.*

---

[2] Although Guidera does not include affirmative defenses in the title of her Answer, the Answer contains affirmative defenses. Guidera, however, does not include any counterclaims in her Answer.

7 - OPINION AND ORDER

*Flat Irons Envtl. Sols. Corp.*, No. CV-12-08261-PCT-JAT, 2014 WL 2804276, at *2 (D. Ariz. June 20, 2014). Rule 26(b) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Thus, "a subpoena seeking completely irrelevant information might be quashed as unduly burdensome." *Williams v. Khan*, CV-17-00029-TUC-BPV, 2018 WL 2240261, at *5 (D. Ariz. May 16, 2018) (quotation omitted). *See also Goolsby v. Raney*, 483 F. App'x 326, 329 (9th Cir. 2012)("It was within the district court's broad discretion over discovery to grant [the] motion to quash discovery" because the materials sought "were properly deemed not 'relevant' for the purposes of Federal Rule of Civil Procedure 26(b)(1) — that is, not 'reasonably calculated to lead to the discovery of admissible evidence.'").

The district court has "broad discretion" to quash a civil subpoena. *Goolsby*, 483 F. App'x at 329. *See also Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813 (9th Cir. 2003) (same).

## DISCUSSION

On April 24, 2018, Plaintiff provided notice to Defendants that Plaintiff would serve a subpoena on Kolarsky seeking:

> Any documents currently in your possession, including but not limited to videotapes or other video recordings, that you received from Gladen and that further depict Gladen "in a state of nudity" as that term is used in ORS 30.865, provided that such materials were created at a time when you were married to someone other than Gladen, and further provided that you received them following your separation from Gladen.

Decl. of John Dunbar, Ex. 1 at 4. Gladen moves to quash the Subpoena on the grounds that the materials sought are irrelevant and inadmissible, the production of the evidence will lead to disputes about collateral matters, and the evidence at issue will humiliate Gladen.

## I. Gladen's Argument

According to Gladen, the materials that are the subject of the Subpoena appear to be "nude images" taken of Gladen by Kolarsky when he was married to his first wife in approximately 1993. Specifically, Gladen testifies in her Declaration:

> I do recall that, in 1993, [Kolarsky] was married to his first wife[.]
>
> * * *
>
> I do not recall whether [Kolarsky] took private pictures of me before the termination of his first marriage, or whether he did so afterwards. . . .
>
> In 1996, Kolarsky and I married. We were married for over 20 years. In February 2016 . . . I filed for separation. . . . [I]n September 2017, the

9 - OPINION AND ORDER

> divorce became final.
>
> 6. [Kolarsky] apparently says that after our divorce, I gave him "materials" containing private images of me taken during his first marriage . . . . I never intentionally gave any such images of myself to Kolarsky during our separation or after our divorce. Over the course of 2016 and 2017, as the divorce proceedings continued, we divided up our household. I gave various possessions to Kolarsky, and I also left possessions for Kolarsky at the house for him to take away. He had opportunities to take materials from the house. In 2016, after I filed separation proceedings, Kolarsky also moved back into the house . . . for three months and he had access to the contents of the house. I also discovered in 2016 that he was making use of built-in hiding places he had previously installed in at least two places in the house, where he hid things. . . . I do not know if any hiding places were used to hide pictures of me. Kolarsky also removed some items from the house without permission after the family court granted me exclusive use of the house in about June 2016.
>
> 7. I knew that Kolarsky had taken private images of me on a small number of occasions during our marriage. In September 2017, I asked him to delete them, in writing, and he assured me that he would.
>
> 8. The images sought in the subpoena are deeply embarrassing to me, and I respectfully ask the Court for relief from the subpoena.

Decl. of Cynthia Gladen ¶¶ 3-8.

As noted, Gladen asserts the images sought are embarrassing, irrelevant to this action, and will not lead to the discovery of admissible evidence. Gladen also notes it is difficult to understand how images taken approximately 25 years ago are relevant to Plaintiff's claims. In addition, Gladen asserts the

images are irrelevant to her defense of *in pari delicto* because they were taken 25 years before the events at issue in this matter and, therefore, are too remote and collateral to undermine that defense.

Gladen also asserts the alleged events of 2017 (*i.e.*, whether Gladen gave Kolarsky the images or Kolarsky obtained them himself some other way) may result in the Court being diverted from the issues at the heart of this matter and may lead to litigation of irrelevant, collateral issues such as how Kolarsky obtained these photos, when the images were taken, and the circumstances under which the images were taken (*i.e.*, whether they were taken when Gladen was married to Kolarsky or while Kolarsky was married to his first wife).

Finally, although Gladen concedes the scope of permissible discovery is broader than evidence allowed at trial, she asserts the evidence sought in the Subpoena would be excluded from trial under several rules of evidence including: Federal Rule of Evidence 402 (relevance); Rule 403 (unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence); Rule 404(b) (evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion that person acted in accordance with his or her character); and Rule 608 (subject to certain exceptions, extrinsic evidence is

not admissible to prove specific instances of a witness's conduct in order to attack or to support the witness's character for truthfulness).

In summary, Gladen contends the images are humiliating and irrelevant, the Subpoena will not lead to the discovery of admissible evidence, and the Subpoena will lead to litigation of collateral matters.

## II. Plaintiff's Argument

Plaintiff asserts in her Response that her Subpoena is reasonably calculated to lead to the discovery of admissible evidence related to Gladen's affirmative defenses and credibility. Specifically, Plaintiff asserts the images "bear on the reasonableness of Defendants' assertions that Plaintiff acquiesced in their misconduct." Pl.'s Resp. at 6. Although it is not entirely clear, it appears Plaintiff contends the evidence sought in the Subpoena is relevant to Gladen's affirmative defenses of waiver and/or consent.

In her Answer Gladen asserts the following regarding her defenses of waiver and consent:

> Plaintiff expressly or implicitly consented to access by third parties, especially Ms. Gladen, to information or images remaining on the SSD and to any alleged intrusion on plaintiff's privacy. Plaintiff alleges that she took pictures or allowed them to be taken of her with Gladen's husband, without clothing. Images were taken in Gladen's home. Without admitting the allegations by plaintiff, as plaintiff alleges, she permitted the images and other information from her computer

> to be copied onto the SSD, by giving Kolarsky
> control of her laptop and allowing him to attempt
> to transfer the contents of her laptop to the SSD,
> and then leaving the SSD with Kolarsky following
> his unsuccessful attempt to do that. At the time,
> Kolarsky was married to Ms. Gladen. Plaintiff's
> consent bars plaintiffs' claims of unauthorized
> access, conversion, replevin, and intrusion upon
> seclusion.
>
> By engaging in an affair with Gladen's husband in
> Gladen's home, plaintiff waived her alleged
> privacy rights as to images taken of the two
> there. By authorizing Dr. Kolarsky to copy the
> contents of her laptop and by failing to take
> reasonable steps to protect any information that
> might have been copied onto the SSD, plaintiff
> further waived her right to possession of the SSD
> and her alleged privacy interests in its contents.
> As a result, any of plaintiff's claims that are
> based upon her alleged privacy interests are
> barred.

Gladen Answer at ¶¶ 61-61.

> Plaintiff asserts Gladen's
>
>> understanding of the circumstances in which she
>> obtained Plaintiff's intimate images, and of the
>> similar circumstances in which Kolarsky obtained
>> Gladen's videos, each bear on whether a reasonable
>> person would understand those circumstances as
>> amounting to consent or to a waiver of a person's
>> privacy rights. Specifically, Gladen's beliefs
>> regarding whether she forfeited her privacy rights
>> in the videos through her conduct will assist the
>> jury in deciding whether Plaintiff did the same
>> through her similar alleged conduct.

Pl.'s Response at 7.

### III. Analysis

Under Oregon law "the test for implied consent is an objective one." *State v. Coffman*, 266 Or. App. 171, 182 (2014). The question is what a reasonable person would have understood

13 - OPINION AND ORDER

under the particular circumstances. *Id.* An individual defendant's subjective understanding of facts is insufficient objectively to establish implied consent. *Id.* ("[T]he fact that the officers knew that defendant was using the back door as his front door does not establish his implied consent absent a showing that an objective visitor, looking at the physical layout of the living units and the residents' use of the area, would also have concluded that he or she was impliedly invited to contact defendant at that door.").

It is unclear how Gladen's alleged understanding of the circumstances in which she obtained Plaintiff's intimate images has any relationship to the alleged circumstances in which Kolarsky obtained Gladen's images. Moreover, the Court disagrees with Plaintiff's assertion that both circumstances "bear on whether a reasonable person would understand those circumstances as amounting to consent or to a waiver of a person's privacy rights." The Court also disagrees with Plaintiff's argument that "Gladen's beliefs regarding whether she forfeited her privacy rights in the [images] through her conduct will assist the jury in deciding whether Plaintiff did the same through her similar alleged conduct." At best, Gladen's understanding of waiver of her privacy rights in images taken 25 years ago would inform the jury only as to Gladen's subjective belief regarding those images at that time, but such evidence would not provide any assistance

14 - OPINION AND ORDER

to the jury in determining what a reasonable, objective individual might understand regarding waiver or implied consent as to the issues at the heart of Plaintiff's Complaint. In any event, the Court also concludes any waiver or implied consent by Gladen pertaining to images of her that were taken 25 years ago and that are now in Kolarsky's possession would be so tenuous as to be irrelevant to this action, and those images are unlikely to lead to the discovery of any admissible evidence.

Finally, the Court finds failure to quash the Subpoena will likely lead to collateral litigation regarding the manner in which Kolarsky obtained the images, when the images were taken, and circumstances in which they were taken. This, in turn, is inconsistent with the proportionality requirements of Rule 26 and the over-arching standard of Rule 1 that the Court and the parties manage civil litigation to ensure its "just, speedy, and inexpensive" resolution.

Accordingly, for these reasons, in the exercise of its discretion, the Court grants Gladen's Motion to Quash and denies as moot Gladen's Motion for Protective Order.

## CONCLUSION

For these reasons, the Court **GRANTS** Gladen's Motion (#37) to Quash Subpoena and **DENIES as moot** Gladen's Motion (#37) Protective

Order.

IT IS SO ORDERED.

DATED this 10th day of July, 2018.

_____
ANNA J. BROWN
United States Senior District Judge